833 So.2d 853 (2002)
James NOLAN, Appellant,
v.
VIRGINIA INVESTMENT FUND LIMITED PARTNERSHIP and James River Capital Corp., Appellees.
No. 3D00-2731.
District Court of Appeal of Florida, Third District.
December 26, 2002.
*854 Hall, David and Joseph and Christopher M. David, Miami, and Michael L. Cotzen, for appellant.
Sullivan & Rivero, Sidley & Austin and Thomas K. Cauley, Jr., Chicago, IL, for appellees.
Before SCHWARTZ, C.J., and JORGENSON and COPE, JJ.
COPE, J.
Appellant James Nolan appeals the dismissal of his claims against a limited partnership in which he invested. We affirm.
Appellee Virginia Investment Fund Limited Partnership (the "Fund") is a Delaware private commodity pool organized as a limited partnership. Appellee James River Capital Corporation is the general partner of the limited partnership. In 1996 Nolan obtained a copy of a Private Placement Memorandum pursuant to which the Fund offered limited partnership interest to investors. After reviewing the Memorandum Nolan decided to purchase a $250,000 limited partnership interest. In connection with his investment, Nolan represented that he had reviewed the Private Placement Memorandum, that he was an experienced investor and that he had a net worth in excess of $1 million.
The Private Placement Memorandum states, "THE INTERESTS ARE SPECULATIVE AND INVOLVE A HIGH DEGREE OF RISK." (R. 245) (emphasis in original). The Memorandum explains elsewhere that the limited partnership interests "ARE SUITABLE ONLY FOR INVESTORS WHO CAN AFFORD TO LOSE THEIR ENTIRE INVESTMENT." (R. 255) (emphasis in original).
The Memorandum reviewed by Nolan contains a page entitled "Conflicts of Interest" which states, among other things:
The General Partner and its principals have a conflict of interest between retaining Trading Advisors which will generate a high level of brokerage commissions (to the benefit of the General Partner) or which have marketing agreements or other ongoing business dealings with the General Partner, and retaining Trading Advisors which will achieve the best results for the Partnership. All of the current Trading Advisors have ongoing business relationships (including in certain cases marketing agreements) with the General Partner, and the General Partner anticipates *855 that most Trading Advisors which it selects in the future will also have such relationships.
. . . .
The General Partner and its principals have a conflict of interest between investing Partnership assets in other commodity pools operated by the General Partner and investing such assets in the best interests of the Partnership, because on the General Partner's own pools it will receive administrative charges, brokerage commissions, interest income and other benefits in respect of such investments.
The General Partner operates commodity pools other than the Partnership and may have financial and other incentives to favor certain of such pools over the Partnership.
(R. 252) (emphasis added).
Eventually Nolan suffered a significant loss on his investment and filed this action against both the Fund and its general partner. Nolan's Second Amended Complaint alleged claims of (1) breach of fiduciary duty for failure to maintain promised diversity in the commodity pool; (2) breach of fiduciary duty by virtue of a conflict of interest; and (3) negligence by changing of the mix of trading advisors utilized by the pool.
The trial court granted the defendant's motion to dismiss the Second Amended Complaint finding that the Memorandum's disclosures negated Nolan's claims.
On appeal Nolan first argues that this court should not enforce the choice of law provision contained in the Subscription Agreement he signed when he purchased his limited partnership interest. The Agreement provides that Delaware law governs the parties' relationship.
We affirm on this issue. There is no indication that it was ever raised in the trial court. The parties' contractual choice of law will be enforced.
Under the Delaware Revised Uniform Limited Partnership Act ("DRULPA"):
"To the extent that, at law or in equity, a partner or other person has duties (including fiduciary duties) and liabilities relating thereto to a limited partnership or to another partner ... (2) the partner's or other person's duties and liabilities may be expanded or restricted by provisions in the partnership agreement."

6Del. Ch. § 17-1101(d) (emphasis added).
The Delaware Supreme Court has addressed this part of the statute:
As the Vice Chancellor noted at summary judgment, a general partner owes the traditional fiduciary duties of loyalty and care to the limited partnership and its partners, but DRULPA § 17-1101(d)(2) "expressly authorizes the ... modification, or enhancement of these fiduciary duties in the written agreement governing the limited partnership." Indeed, we have recognized that, by statute, the parties to a Delaware limited partnership have the power and discretion to form and operate a limited partnership "in an environment of private ordering" according to the provisions in the limited partnership agreement. We have noted that DRULPA embodies "the policy of freedom of contract" and "maximum flexibility." DRULPA's "basic approach is to permit partners to have the broadest possible discretion in drafting their partnership agreements and to furnish answers only in situations where the partners have not expressly made provisions in their partnership agreement" or "where the agreement is inconsistent with mandatory statutory provisions." *856 In those situations, a court will "look for guidance from the statutory default rules, traditional notions of fiduciary duties, or other extrinsic evidence." But, if the limited partnership agreement unambiguously provides for fiduciary duties, any claim of a breach of a fiduciary duty must be analyzed generally in terms of the partnership agreement.
Gotham Partners, L.P. v. Hallwood Realty Partners, L.P., No. 372, 2001, ___ A.2d ___, 2002 WL 31303135 (Del. Oct.11, 2002) (footnotes omitted).
Under the Delaware statute, "[p]rinciples of contract preempt fiduciary principles where the parties to a limited partnership have made their intentions to do so plain." Sonet v. Timber Co., L.P., 722 A.2d 319, 322 (Del.Ch.1998).
It is our view that the plaintiff's claims in the present case are all negated by the explicit terms of the Private Placement Memorandum. In count two, the plaintiff alleges that the defendants breached their fiduciary duty through conflict of interest. The complaint alleges that it was a conflict of interest for James River to retain trading advisors who invest in other commodity pools operated by James River or who have other business relationships with James River. These exact relationships were clearly disclosed in the portion of the Private Placement Memorandum entitled Conflicts of Interest.
At bottom, the plaintiff argues that this type of conflict of interest is impermissible as a matter of law and cannot be waived. As we interpret the Delaware statute, however, this type of business arrangement is permissible where disclosed. See id. at 322 ("This flexibility is precisely the reason why many choose the limited partnership form in Delaware."); see also Gotham Partners, L.P.; Gelfman v. Weeden Investors, L.P., 792 A.2d 977, 984-92 (Del. Ch.2001). There can be no doubt that the trading arrangements and conflict of interest were squarely disclosed in the Memorandum.
In count one, the plaintiff alleges a breach of fiduciary duty by the defendants by failing to diversify the investment approaches as promised in the Private Placement Memorandum. However, the actual claim made in count one is simply another version of count two. What the plaintiff claims the defendants did wrong was "allowing trading advisors to become heavily skewed towards investing in funds in which defendant [James River] was the General Partner." (R. 148). As already stated, there clearly was disclosure that the Trading Advisors were allowed to invest in other funds operated by James River.
The Private Placement Memorandum does contain a discussion of the Fund's desire to obtain diversification of trading methods and markets, but this area of the Memorandum had to do with the use of different Trading Advisors who used different approaches to trading in commodities. (R. 249, 253-54.) This portion of the Memorandum did not relate to the issue the plaintiff now seeks to raise: the claim that the Fund should not have invested (or invested so heavily) in commodity pools operated by James River.
In count three, the plaintiff claims that the defendants were negligent in changing the mix of Trading Advisors. The Memorandum disclosed, however, that "prospective investors should anticipate substantial turnover in the Trading Advisors which act on behalf of the Partnership." (R. 254). The plaintiff maintains that as a result of this turnover and a failure to monitor the Advisors, the defendants allowed the Advisors' investments to become heavily skewed toward investing in funds in which *857 James River was the General Partner. This is simply a reiteration of the claim that the Fund should not have invested (or invested so heavily) in James River commodity pools. As already stated, investment in other funds of James River was specifically contemplated and authorized by the Private Placement Memorandum.
For the stated reasons, the dismissal of the action is correct and is affirmed.